## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## IN COLUMBUS

| | | |
|---|---|---|
| D.P. Dough Franchising, LLC, | : | Case No. 2: 15-cv-2635 |
| 605 N. High St., V199 | : | |
| Columbus, Ohio 43215 | : | |
| | : | Judge _____ |
| Plaintiff, | : | |
| | : | |
| vs. | : | DEMAND FOR JURY TRIAL |
| | : | |
| Edward Southworth | : | |
| d/b/a "Eddie's Calzones" | : | |
| 265 E. Clayton Street | : | |
| Athens, Georgia 30601 | : | |
| | : | |
| Also serve: | : | |
| | : | |
| 817 Harden St. | : | |
| Columbia, SC 29205 | : | |
| And | : | |
| 702 Roper Pond Circle | : | |
| Columbia, South Carolina 29206 | : | |
| | : | |
| Doughmination, LLC | : | |
| c/o Registered Agent Ed Southworth | : | |
| 702 Roper Pond Circle | : | |
| Columbia, South Carolina 29206 | : | |
| | : | |
| Also serve: | : | |
| 817 Harden St. | : | |
| Columbia, SC 29205 | : | |
| | : | |
| John Doe 1 | : | |
| n/a | : | |
| | : | |
| Defendants. | : | |
| | : | |

## VERIFIED COMPLAINT

Now comes the Plaintiff, D.P. Dough Franchising, LLC, ("Plaintiff" or "D.P. Dough") by and through counsel, for its Verified Complaint against Defendants Edward Southworth d/b/a "Eddies Calzones" ("Southworth"), Doughmination, LLC ("Doughmination), and John Doe 1 ("Doe")(collectively "Defendants"), states to this Court as follows:

## NATURE OF THE ACTION

1.      This is a civil action brought by Plaintiff against Defendants for their ongoing and continued acts of trademark infringement, trademark dilution, breach of contract, breach of implied covenant of good faith and fair dealing, tortious interference with a business relationship, violations of the Deceptive Trade Practices Act, fraud, deceit and misrepresentation, and unjust enrichment.

## PARTIES, JURISDICTION, AND VENUE

2.      Plaintiff is an Ohio limited liability company with its headquarters and principal place of business in Franklin County, Ohio.

3.      Plaintiff is the owner of the D.P. Dough restaurant brand and is engaged in the business of franchising D.P. Dough restaurants throughout the United States.  All D.P. Dough restaurants specialize in selling and specifically delivering a wide variety of fresh baked calzones near college campuses.

4.      Defendant Southworth is an individual who, upon information and belief, resides in Athens, Georgia.

5.      Upon information and belief, the "Eddie's Calzones" business located at 265 E. Clayton Street in Athens, Georgia is operated by Southworth as a sole proprietorship.

6.      Upon information and belief, the "Eddie's Calzones" business located at 817 Harden St., Columbia, South Carolina is operated by Defendant Doughmination, a South Carolina limited liability company.

7.      Upon information and belief, Doughmination is owned and managed by Defendant Southworth, who is the alter ego of Doughmination.

8.      Defendant John Doe 1 is an unknown current or former agent, employee, manager, associate, investor or otherwise an affiliate of Doughmination or Southworth or another entity that is in cohorts with Defendants.

9.      On or about September 26, 2013, Defendant Southworth and Plaintiff entered into a written Franchise Agreement, which included a Personal Guaranty ("collectively, the Agreement"). A true and correct copy of the Agreement and Personal Guaranty are attached hereto and made part of this Complaint as Exhibit A.

10.     Pursuant to Section 23 of the Agreement, any action arising from the Agreement or the relationship between the Parties of the Agreement is governed by Ohio law and the proper jurisdiction and venue is in Franklin County, Ohio.

11.     This Court has jurisdiction over this action pursuant to 15 U.S.C. § 1121, 28 U.S.C. §§ 1331, 1338, and 2201, because it arises, in part, pursuant to 15 U.S.C. §§ 1114, 1116-1118 and 1125.  The Court has supplemental jurisdiction over the state claims pursuant to 28 U.S.C. § 1367.

**FACTS**

**The History of Plaintiff and Defendant: Cortland, NY to Columbia, SC**

12.     Plaintiff incorporates by reference paragraphs 1 through 11 of this Complaint as if completely rewritten herein.

13.     Plaintiff specializes in being "the" late night college calzone franchise, with a total of twenty three (23) locations throughout the United States.  Plaintiff's business model typically requires its restaurant franchises to be within 1 mile of a college or university.

14.     Plaintiff acquired the D.P. Dough brand from the founder of D.P. Dough, Zones, Inc., in December 2011 for a sum amounting to over $750,000.  Around the same time as Plaintiff acquired the brand, Southworth became or was the owner of a D.P. Dough restaurant in Cortland, New York.

15.     Upon information and belief, Southworth had no restaurant ownership experience prior to the training and development provided to him by D.P. Dough.

16.     Plaintiff's predecessor, Zones, Inc., did not initially register with the State of New York as a franchisor.  Upon acquiring the D.P. Dough brand, Plaintiff took affirmative steps to register its franchise in every state where stores existed.

17.     In 2013, Plaintiff registered as a franchisor in the state of New York.  In April 2013, Plaintiff presented a Franchise Agreement to Southworth to execute.

18.     On or about September 26, 2013, Southworth executed the Franchise Agreement (attached as Exhibit A).  The Franchise Agreement contains several non-compete provisions and non-diversion of business provisions which are more fully set forth below.

19.     Between October 2013 and December 2013, Plaintiff and Southworth discussed the possibility of Southworth opening a D.P. Dough restaurant in Columbia, South Carolina near the University of South Carolina.  During this time, and in reliance on the existing non-compete and confidentiality obligations of Southworth, Plaintiff D.P. Dough assisted Southworth by sharing D.P. Dough's proprietary information and trade secrets,

including without limitation: The D.P. Dough "New Store Opening Checklist" document and D.P. Dough's timeline and budget for new store openings. Plaintiff also searched for suitable real estate, including engaging a real estate consulting firm to assist with a real estate search for its new store in Columbia, South Carolina. All of the proprietary business model plans were shared with Southworth during this time, with the belief, intention, and reliance that Southworth would open a D.P. Dough store under the Franchise Agreement with D.P. Dough and would otherwise honor his confidentially, non-disclosure, non-compete, and related obligations pursuant to law and the Agreement.

20.     In December 2013, relying upon Southworth's planned opening of a D.P. Dough restaurant in Columbia, South Carolina, Plaintiff permitted Southworth to transfer his D.P. Dough restaurant in Cortland, New York to Bonnie Quackenbush ("Quackenbush") (who is Southworth's mother). On December 20, 2013, Plaintiff and Quackenbush entered into a Franchise Agreement for the Cortland location.

21.     Shortly after Plaintiff approved the transfer of D.P. Dough Cortland from Southworth to Quackenbush, upon information and belief, Southworth made representations that he could open his own calzone restaurant, mirroring a D.P. Dough restaurant, but that he could do so at a significantly lower cost because he would not have to conform to the minimum new store opening budget required by Plaintiff and/or because he would not have to pay franchise fees to D.P. Dough.

22.     Upon information and belief, in connection with an application for an equipment loan for a new D.P. Dough franchise, Southworth made fraudulent statements to a restaurant equipment leasing company about the location of the equipment he was wishing to lease.

23. Upon information and belief, the facts that Southworth misrepresented to the restaurant equipment leasing company included a representation that he was leasing equipment for an existing D.P. Dough restaurant in Cortland, New York at his former franchised location previously sold to his mother; however, his actual intentions were to use this equipment for a new restaurant in Columbia, South Carolina.

24. After Plaintiff was informed of these misrepresentations, on December 4, 2013, via email, Plaintiff via its then Vice-President and current President Matthew Crumpton, Esq. informed Southworth that D.P. Dough would not allow Southworth to open a D.P. Dough franchise using a fraudulent loan application but that he could continue if the loan was for equipment to be used at the new restaurant in South Carolina.  Defendant Southworth did not respond to the email and subsequently cut off communication until 2015.

25. D.P. Dough and Southworth or an affiliate never entered into a new franchise agreement for Southworth to open, own, and manage a store in Columbia, South Carolina as contemplated.

26. Upon information and belief, Southworth opened Fast Eddie's Calzones ("Fast Eddie's") in Columbia, South Carolina in March or April of 2014, and subsequently changed the name to "Eddies Calzones."

27. Fast Eddie's is a direct replica of a D.P. Dough store and concept.  Fast Eddie's is selling calzones, offering late night delivery, located near the heart of a college campus, modeling the late hours, and uses a near identical menu, trade dress, slogans, and even marketing concepts and text.

28. Upon information and belief, Southworth used Plaintiff's business opportunities, trade secrets, menus, and recipes in connection with the opening and continued operation of his Fast Eddie's restaurants that he obtained from the Cortland, New York D.P. Dough store that was operated by his mother and previously by Southworth prior to her acquisition of the same.

29. Upon information and belief, Fast Eddie's changed its name to Eddie's Calzones in 2015.

**Trade Secrets Learned by Southworth during time as a D.P. Dough Franchisee**

30. During the time that Southworth operated a D.P. Dough franchise, in reliance on his obligations and promises pursuant to the franchise agreement, Plaintiff disclosed to Southworth confidential and proprietary trade secret information, which included, but was not limited to the D.P. Dough Operating Manual (which included the D.P. Dough Marketing Manual, New Store Checklist and Timeline, and Free Calzone Day Manual), the Calzone Recipes, the Mix and Marinara Recipes, and online training videos (collectively, "the D.P. Dough Trade Secrets").

31. Paragraph 2C of the Franchise Agreement provides as follows:

Franchisee acknowledges that all standards and policies established by D.P. Dough Franchising and all information related to the System is confidential and proprietary information belonging to D.P. Dough Franchising. Franchisee shall not use any such information or disclose any such information to any third party, either while this Agreement is in effect or following its termination or expiration, except as expressly permitted in this Agreement. Franchisee shall use its best efforts to protect the confidentiality of such information from appropriation by its employees.

32. The Franchise Agreement further elaborates on the "System" in paragraphs 2(A) and 2(B) as follows:

**A.** The D.P. Dough Franchising system (the "System") is a unique style of restaurant operation for the sale of food products and beverages of uniform quality. The most fundamental aspect of the System is the adherence by Franchisee to the standards and policies of D.P. Dough Franchising for ensuring the uniform operation of all Restaurants using the System, including, but not limited to, the service of only designated foods and beverages, the utilization of only designated prescribed equipment, building layouts and design, and the emphasis upon prompt and courteous service in a clean and wholesome atmosphere. The System is set forth in the Operating Manual and in Quality Control Standards, which update or revise the Operating Manual.

**B.** D.P. Dough Franchising may periodically revise the Operating Manual and the System by communicating any such revisions to Franchisee, whether by posting revisions to a password protected website to which Franchisee will be provided with access, electronic mail, regular mail, or otherwise. In the event that Operating Manual revisions are posted to a website, Franchisee shall continuously monitor the same for any such revisions and implement such revisions pursuant to the timeline provided by D.P. Dough Franchising. Franchisee shall operate the Restaurant according to the System, including the Operating Manual and all standards, policies, and specifications periodically established or revised by D.P. Dough Franchising. This is a material term. Failure to comply with this term shall result in a Default of this Agreement by Franchisee pursuant to Section 16.

33. Upon information and belief, Southworth accessed the System and its updated proprietary trade secret information as a franchisee and further following the transfer of the Cortland Store to Quackenbush.

34. Upon information and belief, Southworth and Doughmination have used and are using the System and D.P. Dough Trade Secrets in the operation of Eddie's Calzones locations in Athens, GA and Columbia, SC.

35. During the time that Southworth owned a D.P. Dough Franchise, and worked with D.P. Dough and D.P. Dough's real estate consultant, Southworth obtained internal confidential business and marketing strategies of D.P. Dough, including protected information that is part of the System.

36.     While pursuing his personal business and investment schemes, Southworth used and/or attempted to use D.P. Dough's protected business model, financial models, trade secrets, trade dress, and other confidential information or elements of Plaintiff's System for the benefit of himself and his business and investment schemes.

## Direct Competition in Athens, Georgia

37.     In February 2014, Plaintiff executed a Franchise Agreement with franchisee Bulldawg Dough, LLC ("Bulldawg Dough") for the purpose of opening a franchised D.P. Dough location in Athens, Georgia.  Bulldawg Dough obtained suitable financing for the Athens, Georgia D.P. Dough in early February 2015.

38.     In mid-February 2015, Bulldawg Dough narrowed its search for properties in Athens, Georgia to two locations: 265 E. Clayton Street ("Clayton Street") and 198 W. Broad Street ("Broad Street").  The Landlord for Clayton Street submitted a proposed letter of intent to Bulldawg Dough on February 19, 2015.

39.     At the same time, unbeknownst to Plaintiff, Southworth, charged with his knowledge of Plaintiff's growth model, was searching for real estate in Athens, Georgia so that he could open up a competing calzone restaurant.

40.     While looking for property in Athens, Georgia, Southworth had knowledge that Plaintiff was entering the Athens, Georgia market through Bulldawg Dough, and was simultaneously negotiating with the landlord of Clayton Street.  In an email to Plaintiff's CEO, Matt Crumpton, Southworth described the negotiations between Bulldawg Dough and Defendant for the lease as a "bidding war" between Southworth and D.P. Dough.

41.     Notwithstanding Southworth's non-compete and trade secret agreements, after Bulldawg Dough entered into the letter of intent, Southworth signed a lease for Eddie's Calzones at the Clayton Street location.

42.     After executing the lease for the Clayton Street location, Southworth attempted to "sell" his rights to his business and under the lease to D.P. Dough for $500,000 to $600,000, a an amount that was substantially more than the value of the same.

43.     Since the D.P. Dough store could not lease the Clayton Street location, and refused to pay Southworth over half a million dollars for his wrongfully-acquired rights in the Clayton Street lease, on June 30, 2015, Bulldawg Dough executed a lease for 198 W. Broad Street.

44.     Upon information and belief, the 198 W. Broad Street location is more expensive, has less foot traffic, and requires more build-out than the Clayton Street location in order to operate a D.P. Dough store.  In addition, it requires the construction of an expensive ventilation hood.

45.     Upon information and belief, the Clayton Street location would cost Bulldawg Dough and D.P. Dough less money to operate.

46.     Despite Plaintiff's warnings to Southworth that it would be a violation of the provisions of the Franchise Agreement, Defendant Southworth opened and currently continues to operate an Eddie's Calzones restaurant at 265 E. Clayton Street.  Southworth also has opened and operates an Eddie's Calzones in Columbia, South Carolina.

**The Franchise Agreement Non-Compete and Business Diversion Provisions**

47.     Section 14A of the Franchise Agreement provides as follows:

Franchisee shall not, without the prior written consent of D.P. Dough Franchising, directly or indirectly (each of the following obligations is also

10

secured by the Personal Guaranty, if applicable, as attached as Attachment C and fully incorporated herein):

     i.     During the term of this Agreement, (a) engage in any activity in competition with the System, including, but not limited to, involvement, whether as an owner, officer, director, employee, lender, or otherwise, of any business engaged in the sale of calzones or pizza, or a business that customarily has operating hour's past midnight and offer delivery services (collectively, a "Competing Restaurant"), other than at the Restaurant, or (b) employ any person or furnish or permit any person who is engaged or who has arranged to become engaged in any activity in competition with the System, including, but not limited to, involvement, either as an owner, officer, director, employee, lender, or otherwise, of any Competing Restaurant;

     ii.     For a period of three (3) years following the expiration, termination, or transfer of this Agreement, regardless of the cause of such expiration, termination or transfer, engage in the operation of a Competing Restaurant within sixty (60) miles of (a) the Restaurant, or (b) any D.P. Dough Restaurant.

     iii.     During the Term of this Agreement and for a period of three (3) years after its expiration, termination, or transfer, regardless of the cause of such expiration, termination, or transfer, divert or attempt to divert any business or customer from any D.P. Dough restaurant.

48.     Southworth's operation of Eddie's Calzones at 265 E. Clayton Street is a mere .3 miles (two and a half blocks) from the D.P. Dough location at 198 W. Broad Street.

49.     Upon information and belief, Southworth had full and complete knowledge prior to opening "Eddie's Calzones" that D.P. Dough was opening a restaurant in Athens, Georgia.

50.     Upon information and belief, Southworth had full and complete knowledge that D.P. Dough planned and intended to open a D.P. Dough Restaurant at the Clayton Street location prior to opening "Eddie's Calzones."

### D.P. Dough's Copyrighted Material

51.     The owner of D.P. Dough Raleigh, Rick Lounsberry, designed specific D.P. Dough menus, used specific fonts, and took specific photographs for use in D.P. Dough's marketing and online presence to customers.

52.     Rick Lounsberry ("Lounsberry") assigned all of the copyrights to D.P. Dough.

53.     Lounsberry and D.P. Dough have complied in all respects with the Copyright Act of 1976, 17 U.S.C. § 101, et seq., as amended, and all other laws and regulations governing copyright, and has secured the exclusive rights and privileges in and to the copyright for the menus and photographs.

54.     D.P. Dough has an "About Us" section written and broadcasted to online customers and potential franchisees who access their website.

55.     D.P. Dough has complied in all respects with the Copyright Act of 1976, 17 U.S.C. § 101, et seq., as amended, and all other laws and regulations governing copyright, and has secured the exclusive rights and privileges in and to the copyright for their written work.

56.     The United States Copyright Office has issued copyright registrations to Plaintiff, VAu 1-212-004 and TXu 1-946-407.  True and correct copies of the Registrations are attached to this Complaint as Exhibit B and are incorporated herein by reference.  The registrations correspond to the images contained on Exhibit C.  The images constitute photographs, text, and menus used by Plaintiff.  The works are comprised of material wholly original with Plaintiff and its Franchisees and are copyrightable subject matter under the laws of the United States.

57.     The Registrations fulfilled any and all statutory requirements of registration; and pursuant to Federal Rule of Evidence 201(b), this Court may take judicial notice thereof.

58.     Pursuant to 17 U.S.C.A. § 410, the Registrations and the certificates of a registration constitute *prima facie* evidence of the validity of the copyrights and of the facts stated in the certificates.

59.     Photographs, text and menus pursuant to such Registrations relevant to this action are attached to this Complaint as Exhibit C and are incorporated herein by reference.

60.     Plaintiff is the owner of any and all rights in such items as the creator of such original works of authorships, or assignor of the works, and having not assigned or exclusively transferred such rights, including, without limitation, the copyrights and all inherent rights afforded by the United States Copyright Act, 28 USC Section 106, *inter alia*; and the term of such rights is current and has not expired.

61.     Plaintiff began to notice and track Defendants' unauthorized and wrongful use or reuse of Plaintiff's works in violation of their copyrights.  To confirm each unauthorized and wrongful reuse by Defendants, Plaintiff compared its photographs and menus sent to the United States Copyright Office with images used by Defendants.

62.     Defendant has used the copyrighted works of Plaintiff on its menus, Twitter, Facebook accounts, and online.  Here is a comparison of one glaringly obvious violation:



D.P. Dough's Menu and
copyrighted photographs



Eddie's Calzones' Menu
using D.P. Dough's
copyrighted material

63. In addition, Defendants used Plaintiffs copyrighted images, menu designs and text for its menus, on its website, and in its marketing and social media campaigns. Examples of the Defendants' use of the Plaintiff's copyrighted images are attached hereto as Exhibit D, which is hereby incorporated herein by reference. As shown on Exhibit D, the infringing uses include, but are not limited to:

i. Defendant's use of D.P. Dough's copyrighted about us marketing text used on D.P. Dough's LinkedIN profile on his Fast Eddie's Website at http://www.eddiescalzones.com/#!ourstory/csgz;

ii.  Defendant's use of near-identical menu front and back that includes virtually identical layout, text, images, and menu items,  Upon information and belief, Southworth used a digital copy of D.P. Dough's copyrighted menu and simply altered the image by inserting his Fast Eddie's logo along with the other slight variations;

iii.  Defendants copied and distributed D.P. Dough's image of its "Buffer Zone" calzone on the Fast Eddie's menu front and back as well as its website, not only infringing upon D.P. Dough's copyrights, but also fraudulently advertising its product by representing that the calzone in the image was one created by Fast Eddie's when in fact, it was a D.P. Dough calzone;

iv.  Defendants copied and distributed D.P. Dough's image of its generic calzone on the Fast Eddie's menu front, not only infringing upon D.P. Dough's copyrights, but also fraudulently advertising its product by representing that the calzone in the image was one created by Fast Eddie's when in fact, it was a D.P. Dough calzone;

v.  Defendants copied, displayed and distributed D.P. Dough's image of its "Raleigh Zone" calzone on the Fast Eddie's menu back, on at least three different  website pages (as shown by the screen shots on Exhibit D, including        but        not        limited        to: http://www.eddiescalzones.com/#!menu/c21kz, http://www.eddiescalzones.com/,                            and http://www.eddiescalzones.com/#!ourstory/csgz,  at  least  seven

different times via the Fast Eddie's Twitter social media profile (as shown by the screen shots on Exhibit D, including but not limited to at https://twitter.com/eddiescalzusc), and at least five different times via the Fast Eddie's Facebook social media profile (as shown by the screen shots on Exhibit D, including but not limited to at https://www.facebook.com/pages/Eddies-Calzones/1442394669387822).  Defendants also copied, displayed, published and distributed a print advertising and coupon using the image.  In doing so, Defendants not only infringed upon D.P. Dough's copyrights, but Defendant's also fraudulently advertised the Fast Eddie's product by representing that the calzone in the image was one created by Fast Eddie's when in fact, it was a D.P. Dough calzone.

**Facts Relating to Trademark Infringement, Trade Dress Infringement, and Defendant's Deceptive Practices**

64.    D.P. Dough has been in existence for about twenty-seven years and has become known in the marketplace as a leader in its industry.  D.P. Dough takes significant efforts to protect its goodwill, service marks and trademarks, and as such is the owner of numerous federally registered trademarks, as well as various associated registered and/or unregistered trade dresses.  D.P. Dough's service marks registered with the United States Patent and Trademark include the following:

| USPTO Trademark Description | International Class | Reg No |
|---|---|---|
| The Pizza Alternative | 42 | 1914006 |
| Passing Zone | 30 | 1942915 |
| School Zone | 30 | 1942911 |
| Tow Zone | 30 | 1944208 |
| Speed Zone | 30 | 1948849 |
| Zone | 30 | 2105378 |
| Zone Out | 42 | 2507055 |
| Get In The Zone | 42 | 2510297 |
| Work Zone | 30 | 2519943 |
| Safety Zone | 30 | 2522380 |
| Comfort Zone | 30 | 2542825 |
| Border Zone | 30 | 2542824 |
| Sports Zone | 30 | 2542823 |
| Red Zone | 30 | 2542822 |
| Construction Zone | 30 | 2542821 |
| Combat Zone | 30 | 2542826 |
| Drop Zone | 30 | 2542820 |
| D.P. Dough | 42 | 1680727 |
| Blue Zone | 30 | 2555808 |
| THE ORIGINAL CALZONE COMPANY SINCE 1987 | 42 | 2597530 |
| Open Crazy Late | 43 | 4261225 |
| Zonie | 30 | 4261223 |
| Danger Zone | 30 | 1780479 |
| Strike Zone | 30 | 1781631 |
| Loading Zone | 30 | 1781634 |
| Time Zone | 30 | 1781633 |
| Parking Zone | 30 | 1781632 |
| Oh! Zone | 30 | 1785729 |
| End Zone | 30 | 1785730 |
| To Each His Zone | 42 | 1808225 |
| Buffer Zone | 30 | 2805318 |
| Dough Shack | 43 | 2837615 |

65.     In addition to the above referenced trademarks and service marks, D.P.

Dough uses several distinct characteristics to market and highlight its brand.  These include

17

red and black coloring, design, the service mark text "Hook it Up," and "Zone," and their menu design, coloring, style, and font.  All of D.P. Dough's franchises use the same or similar coloring, menus, pictures, design, and slogans so customers can readily identify their brand. The D.P. Dough trade dress scheme has only had minor alterations over the years.  Over the twenty-seven year history of D.P. Dough, its trade dress has become distinctive in the marketplace.

66.     The trademarks and trade dress have been continuously used in commerce by Plaintiff, in the United States, since D.P. Dough's purchase by Plaintiff in 2013, and prior to such date by Plaintiff's predecessor in interest for a continuous period of time, some dating back as far 1987.  As Plaintiff acquired the goodwill in the trademarks from its predecessor, the continued use dating prior to 2013 by its predecessor is attributable to Plaintiff.  Therefore, these marks and dress have been continuously used for as many as twenty-eight years prior to the unauthorized and infringed use of the same by Defendants.

67.     The D.P. Dough trademarks and trade dress have become distinctive, are known to the customers of D.P. Dough and its franchises, are non-functional, are incontestable, and in full force and effect.  The marks distinguish D.P. Dough from other restaurants and competitors.  They have acquired secondary meaning through their distinctiveness, provide significance of their products to customers, and are extremely valuable to Plaintiff.

68.     Defendants have adopted and use trade dress designs and formats, including menu designs, coloring, marketing designs, and trademarks that are identical or nearly identical to Plaintiff's trade dress and trademarks.

69.     Defendants have not received permission from Plaintiff to use Plaintiff's trade dress or trademarks.

70.     Defendants are openly and intentionally using D.P. Dough's trademarks and trade dress in their stores, their menus, and in their online presence through its website and social media accounts such as Twitter and Facebook.   Defendants' willful misappropriation of D.P. Dough's trade dress and trademarks include without limitation Defendant's infringement of D.P. Dough's "Buffer  Zone" trademark, its "Roni Zoni" trademark, its "Spinner Zone" trademark, its "Hook it Up" and "Hooked up" trademarks, its "pounder" trademark, and its "Construction Zone," as well as its use images of D.P. Dough calzones and its use of a near identical copy of a D.P. Dough menu, including the menu options, layout design, styling, design, colors, slogans, text and images.

71.     Defendants have willfully and intentionally engaged in the foregoing activities, in direct competition with Plaintiff, with the knowledge that the Trademarks were used, owned, and/or registered by D.P. Dough and that the advertisement, sale and marketing of was unauthorized.

72.     Defendants' advertisement, sale and marketing of products using Trademarks and trade dress that are confusingly similar to the D.P. Dough Trademarks and trade dress, without permission is, and has been, a deliberate attempt to trade on the valuable rights and goodwill established by D.P. Dough in the D.P. Dough Trademarks and trade dress.

73.     Defendants have improperly traded on, and profited from, the goodwill and reputation established by D.P. Dough.

74.     The Franchise Agreement, section 13, states as follows:

**A.** Franchisee acknowledges that the name D.P. Dough®, as well as all of the trademarks and service marks listed on Attachment B to this Agreement are owned exclusively by D.P. Dough Franchising ("the Marks"). D.P. Dough Franchising and its franchisees have the right to use the D.P. Dough Marks, as well as any other trade names, service marks, or trademarks, owned by D.P. Dough Franchising or developed or acquired in the future. For purposes of this Agreement, all such trade names, service marks and trademarks, whether currently existing or developed or acquired in the future shall be referred to as the Marks, and shall include the Marks on Attachment B, as well as any other trademark or service mark used in connection with any D.P. Dough® restaurant, including Marks that have not yet been registered with the United States Patent and Trademark Office. Franchisee shall use the Marks only in the manner and to the extent specifically permitted by this Agreement and the System. Franchisee does not acquire any ownership interest in the Marks as a result of this Agreement, as a result of Franchisee's use of the Marks, or otherwise.

**B.** Franchisee acknowledges and agrees that its right to use the Marks is non-exclusive and that D.P. Dough Franchising, in its sole discretion, has the right to grant similar rights to others under such terms and conditions as D.P. Dough Franchising deems fit, and to operate restaurants itself under the Marks.

**C.** Franchisee expressly covenants that during and after the term of this Agreement, Franchisee shall not directly or indirectly contest or aid in contesting the validity or ownership of the Marks.

75.    Defendants' actions have violated Southworth's obligations in the Franchise Agreement.

76.    In a willful violation of the Lanham Act, the Defendants have elected to market and sell products in an attempt to deceive the public and trade off the substantial goodwill created by Plaintiff through Plaintiff's use of its own trademarks and trade dress.

77.    Defendants have substantially duplicated Plaintiff's business model and products, claiming them as their own, and unfairly targeted areas of growth as recognized by D.P. Dough and shared with Southworth.

78.    Defendants have knowingly and willfully infringed upon Plaintiff's trademarks, service marks and trade dress pursuant to the Lanham Act, the Ohio Deceptive

Trade Practices act and the common law of Ohio, and encouraged or assisted former D.P. Dough employees to conceal information regarding Southworth's opening the competing stores.

79.     Upon information and belief, Defendants have misrepresented to others including investors, landlords, customers, and other business contacts that they have a relationship with D.P. Dough.

## COUNT ONE

### BREACH OF CONTRACT AGAINST DEFENDANT SOUTHWORTH

80.     Plaintiff incorporates by reference paragraphs 1 through 79 of this Complaint as if completely rewritten herein.

81.     As a condition of becoming a franchisee of D.P. Dough, Southworth entered into a Franchise Agreement, attached hereto as Exhibit A (the "Agreement" or "Franchise Agreement"), with D.P. Dough which constitutes a valid and enforceable contract between the parties thereto.

82.     The conduct of Southworth constitutes a breach of the provision of the Agreement, and a previously signed, separate non-disclosure agreement, including but not limited to Southworth's non-compete obligations, diversion of business obligations, trade secret obligation, and intellectual property obligations in the Franchise Agreement, and specific non-disclosure provision in the non-disclosure agreement.

83.     Southworth continues to breach the agreements.

84.     Southworth's breaches were intentional, willful, and deliberate and done so with the intention to harm Plaintiff, deprive Plaintiff of payments and royalties pursuant to

the Franchise Agreement, and misappropriate and dilute Plaintiff's goodwill and trade secrets.

85.     As a result of Southworth's numerous breaches of the agreements, Plaintiff has been and will continue to suffer substantial, irreparable harm and damages, and is therefore entitled to injunctive relief, monetary damages, and attorney's fees pursuant to the Franchise Agreement and Ohio law.


**COUNT TWO**

**MISAPPROPRIATION OF TRADE SECRETS AGAINST DEFENDANTS SOUTHWORTH, DOUGHMINATION AND JOHN DOE 1**

86.     Plaintiff incorporates by reference paragraphs 1 through 85 of this Complaint as if completely rewritten herein.

87.     The D.P. Dough Trade Secrets derive independent economic value from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from their disclosure and use.

88.     Plaintiff makes significant efforts to maintain the secrecy of the D.P. Dough Trade Secrets, including without limitation by limiting access to the information and by utilizing non-disclosure agreements like the one executed by Defendant Southworth as part of the Franchise Agreement (for example, see Exhibit A, section 2(c)).

89.     By using D.P. Dough Trade Secrets in the operation of Eddie's Calzones, Defendants Southworth and Doughmination knowingly used improper means to misappropriate the D.P. Dough Trade Secrets for Defendants' economic benefit.

90.     Unless enjoined by this Court, the actions of Defendants Southworth and Doughmination, LLC will continue to cause severe and irreparable harm to Plaintiff.

91.     Defendants Southworth and Doughmination have been unjustly enriched by their misappropriation of the D.P. Dough Trade Secrets.

92.     As a proximate result of Defendants' actions, Plaintiff has suffered damages.

93.     Defendants' actions were willful and malicious, entitling Plaintiff to punitive damages and attorney's fees.

## COUNT THREE

### COPYRIGHT INFRINGEMENT AGAINST DEFENDANTS SOUTHWORTH, DOUGHMINATION, AND JOHN DOE 1

94.     Plaintiff incorporates by reference paragraphs 1 through 93 of this Complaint as if completely rewritten herein.

95.     At all times pertinent to this Complaint, Defendants had access to Plaintiff's works relevant herein. Such works are referenced above and are attached hereto as Exhibits C with their corresponding copyright registrations attached as Exhibit B.

96.     Defendants have infringed on Plaintiff's exclusive rights pursuant to the United States Copyright Act under 17 U.S.C.A § 106 by copying, displaying, distributing Plaintiff's copyrighted works and by creating derivative works from Plaintiff's copyrighted works and by wrongfully reusing these works without Plaintiff's authorization, license or consent.

97.     Specifically including, but without limitation, Defendants' unauthorized copying, distribution, display and use of Plaintiff's protected work violates Plaintiff's exclusive rights granted in 17 U.S.C.A. § 106, including those in section 106(1), (2), (3) and (5).

98.     Defendants' use of the Plaintiff's copyrighted works do not constitute "fair use" as defined by 28 U.S.C. § 107 or otherwise by the United States Copyright Act or the laws under United States or Ohio.

99.     Each of the alleged acts of infringement occurred within the applicable statutory period of limitations.

100.    Each of the alleged infringements were willful, intentional and malicious, since Defendants are aware of Plaintiff's ownership rights to the copyrights, were aware of the access based strictly on an executed franchise agreement and confidential relationship, and aware of the restrictions of use of the works by Plaintiff.  Moreover, Defendants used the copyrighted works in direct competition with Plaintiff despite a validly executed non-compete and non-business diversion agreement, and in a way that fraudulently represented that Plaintiff's calzones, as pictured in some of the images, were actually Defendants' calzones when they were not.

101.    Without the permission, license, or consent of Plaintiff, Defendants infringed on Plaintiff's copyrights by copying and using Plaintiff's works for purposes not agreed or authorized by Plaintiff.

102.    By reason of Defendants' acts of copyright infringement, Plaintiff has suffered and will continue to suffer substantial damage to their current and future business by diversion of trade, loss of profits, dilution of the value of rights, in all amounts which are not yet fully ascertainable.

103.    Unless restrained and enjoined, Defendants' acts of copyright infringement will cause Plaintiff irreparable injury.

104.    Defendants' willful acts of copyright infringement justify either 1) the award of the maximum measure of statutory damages against them, namely, of One Hundred and Fifty Thousand Dollars ($150,000) for each act of infringement of Plaintiff's copyrights, together with costs and attorneys' fees; or, alternatively, at Plaintiff's election, 2) an award to Plaintiff of its actual damages incurred as a result of Defendants' acts of infringement, plus any profits of Defendants attributable to the infringements, together with costs and attorneys' fees.

**COUNT FOUR**

**TRADEMARK INFRINGEMENT AGAINST DEFENDANTS SOUTHWORTH, DOUGHMINATION, AND JOHN DOE 1**

105.    Plaintiff incorporates by reference paragraphs 1 through 104 of this Complaint as if completely rewritten herein.

106.    D.P. Dough's use of its various trademarks, service marks, logos, labels, designs, "Zone®" menu items, and online presence predates any alleged use by Defendants in the United States.

107.    Defendants' use of the likeness, images, logo, slogans, and references to their product is likely to deceive and cause confusion and mistake among consumers, customers, and potential future franchisees as to the source and origin of the goods provided or offered by Defendants.  Specifically, Defendants are openly and intentionally using D.P. Dough's trademarks in their stores, their menus, and in their online presence through its website and social media accounts such as Twitter and Facebook.  Defendants' willful misappropriation of D.P. Dough's trademarks include without limitation Defendants'

infringement of D.P. Dough's "Buffer Zone" trademark, its "Roni Zoni" trademark, its "Spinner Zone" trademark, its "Hook it Up" and "Hooked up" trademark s, its "pounder" trademark, and its "Construction Zone" trademark.

108. Defendants' use of the Trademarks belonging to D.P. Dough is likely to deceive and cause confusion and mistake among consumers, customers, and potential future franchisees as to the source and origin of the goods provided or offered by Defendants.

109. D.P. Dough has not authorized, licensed, or otherwise condoned or consented to Defendants' use of any of D.P. Dough's Trademarks, label, logos, and slogans beyond those allowed in an active franchise relationship subject to an executed franchise agreement and subject to the payment of franchise fees.

110. Defendants have misappropriated and continue to misappropriate D.P. Dough's substantial property rights, as well as the goodwill associated with D.P. Dough's brand. Unless restrained and enjoined by this Court, such conduct will continue and will permit Defendants to improperly interfere with D.P. Dough's continued promotion and expansion of the D.P. Dough franchise, brand, Trademarks, and business.

111. As a result of Defendants' ongoing unlawful activity under 15 U.S.C. § 1125, and Ohio law, D.P. Dough has suffered and continues to suffer irreparable harm and damages in an amount that is not presently ascertainable.

112. Defendants' multiple acts of infringement are each intentional, willful and malicious as they are in violation of the Franchise Agreement and made specifically with the intent to circumvent paying royalties and license fees to Plaintiff and to directly compete with Plaintiff and its franchisees by operating a near-identical store and concept

just one block away from a D.P. Dough Store.  Therefore, Plaintiff is entitled to remedies that include injunctive relief and monetary damages, including but not limited to all of Defendants' profits, all of Plaintiff's losses, a license fee, treble damages and attorney's fees.

## COUNT FIVE

### TRADE DRESS INFRINGEMENT AGAINST DEFENDANTS SOUTHWORTH, DOUGHMINATION, AND JOHN DOE 1

113.    Plaintiff incorporates by reference paragraphs 1 through 112 of this Complaint as if completely rewritten herein.

114.    At all times pertinent to this Complaint, Defendants had access to Plaintiff's trade dress based on their relationship and Agreement with D.P. Dough.

115.    After termination of the Agreement, Southworth no longer had authority to use any reference to D.P. Dough in his business or any future business that he is serving as an agent for.

116.    Defendants, with no authority, permission, or license, modeled their business off of D.P. Dough's trade dress including the coloring, menu items offerings, marketing designs, menu designs, slogans, text and advertising copy, and pictures.  The misappropriation includes ongoing use of a near-identical menu to that of a D.P. Dough store menu and near identical menu items, including many of the item names.  Defendants' printed menu items are organized in the same general fashion and order a D.P. Dough store printed menu and Defendants' digital or online menus are likewise organized in the same general order as a D.P. Dough's digital or online menus.

117.    Defendants' use of the trade dress belonging to D.P. Dough is likely to deceive and cause confusion and mistake among consumers, customers, and potential future

franchisees as to the source and origin of the goods and services provided or offered by Plaintiffs and Defendants.

118.    Defendants' multiple acts of trade dress infringement are each intentional, willful and malicious as they are in violation of the Franchise Agreement and made specifically with the intent to circumvent paying royalties and license fees to Plaintiff and to directly compete with Plaintiff and its franchisees by operating a near-identical store and concept just one block away from a D.P. Dough Store.  Therefore, Plaintiff is entitled to remedies that include injunctive relief and monetary damages, including but not limited to all of Defendants' profits, all of Plaintiff's losses, a license fee, treble damages and attorney's fees.


<u>**COUNT SIX**</u>

<u>**DECEPTIVE AND UNFAIR TRADE PRACTICES UNDER OHIO REV. CODE § 4165.02 AGAINST DEFENDANTS SOUTHWORTH, DOUGHMINATION AND JOHN DOE 1**</u>

119.    Plaintiff incorporates by reference paragraphs 1 through 118 of this Complaint as if completely rewritten herein.

120.    Through the conduct described above, Defendants have engaged in deceptive trade practices in violation of Ohio Rev. Code § 4165.01, *et. seq.*

121.    Specifically, Defendants' conduct includes, without limitation, violations of the following:

1.    O.R.C. 4165.02(A)(1) by passing off goods or services as goods of another;

2.    O.R.C. 4165.02(A)(2) by causing a likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services;

3. O.R.C. 4165.02(A)(3) by Causing a likelihood of confusion or misunderstanding as to affiliation, connection, or association with, or certification by, another;

4. O.R.C. 4165.02(A)(4) by using deceptive representations in connection with goods or services;

5. O.R.C. 4165.02(A)(7) by representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have;

6. O.R.C. 4165.02(A)(10) by disparaging the goods, services, or business of another by false representation of fact;

122. This conduct, unless enjoined by this Court, will continue to cause irreparable injury to D.P. Dough's business and reputation for which there is no adequate remedy at law.

123. Defendants' conduct is deliberate and willful and has been committed with the intent to cause confusion and mistake, to deceive the public, and/or to misrepresent the affiliation, connection or sponsorship of the Defendants' goods and commercial activities with the D.P. Dough Franchise.

124. Defendants will continue their acts of deceptive trade practices, causing irreparable injury to D.P. Dough, unless restrained and enjoined by this Court.

125. As a direct and proximate result of Defendants' ongoing unlawful activities, Plaintiff has and continues to suffer damages.

126. Plaintiff is therefore entitled to injunctive relief, monetary damages, and attorney's fees pursuant to O.R.C. 4165.03.

## COUNT SEVEN

## UNFAIR COMPETITION  PURSUANT TO OHIO LAW AGAINST DEFENDANTS SOUTHWORTH, DOUGHMINATION AND JOHN DOE 1

127.    Plaintiff incorporates by reference paragraphs 1 through 126 of this Complaint as if completely rewritten herein.

128.    D.P. Dough's use of the restaurant design, business structure, menu, photos, sauces, recipes, and slogans, trademarks, logos, trade dress, marketing concepts and designs, menu items and food offerings predates any use by Defendants of a similarly confusing service, trade marks, or trade dress and other marks, designs, marketing materials, and offerings.

129.    Defendants' actions in connection with the "Eddie's Calzone" business is likely to deceive and cause confusion and mistake among consumers and/or customers as to the source and origin of the goods provided by Defendants and the sponsorship, connection, or endorsement from D.P. Dough.

130.    D.P. Dough has not authorized, licensed, or otherwise condoned or consented to Defendants' use of the D.P. Dough "brand."

131.    The conduct of Defendants, as alleged herein, constitutes unfair competition under the common law of the state of Ohio.

132.    Defendants' conduct is deliberate, malicious, willful and committed with the intent to cause confusion and mistake, to deceive the public, and/or misrepresent the affiliation, connection, or sponsorship of the Defendants' commercial activities with D.P. Dough.

133.    Defendants will continue their acts of unfair competition, causing irreparable injury to D.P. Dough, unless such activities are enjoined by this Court.

134.    As a direct and proximate result of Defendants' ongoing unlawful activities, Plaintiff has and continues to suffer damages in amount that is not presently ascertainable.

## COUNT EIGHT

### TORTIOUS INTERFERENCE WITH PROSPECTIVE/CONTRACTUAL BUSINESS ADVANTAGE AND BUSINESS RELATIONSHIPS AGAINST DEFENDANTS SOUTHWORTH, DOUGHMINATION AND JOHN DOE 1

135.    Plaintiff incorporates by reference paragraphs 1 through 134 of this Complaint as if completely rewritten herein.

136.    Plaintiff and representatives of Plaintiff's company had and have contractual and/or business relationships with, among others, its suppliers, employees, investors, potential franchisors, and commercial landlords.

137.    Through Southworth's time as a franchisee with D.P. Dough, he knew of the relationships that D.P. Dough had fostered with others.

138.    Upon information and belief, Defendants have intentionally, maliciously, and without justification or privilege acted to deprive Plaintiff of its existing and prospective contractual and/or business relationships.

139.    This interference by Defendants was wrongful and tortious.

140.    As a result of the tortious actions by Defendants, Plaintiff has been and will continue to be severely and irreparably damaged.

## COUNT NINE

### UNJUST ENRICHMENT AGAINST DEFENDANTS
### SOUTHWORTH, DOUGHMINATION AND JOHN DOE 1

141.    Plaintiff incorporates by reference paragraphs 1 through 140 of this Complaint as if completely rewritten herein.

142.    By engaging in the conduct described above, Defendants have directly benefitted, including without limitation unjust benefits from their unlawful use, misappropriation and infringement of Plaintiff's copyrights, trademarks, trade dress, and trade secrets, and their breach of the Franchise Agreement and their fiduciary or other obligations at law and equity.

143.    Defendants have unlawfully benefitted from valuable business information known only to it by its infringement into D.P. Dough's business.

144.    As a result, Defendants have been unjustly enriched by taking advantage of D.P. Dough's reputation, trade, slogans, brand, trademarks and trade dress, all which D.P. Dough invested significant economic value and time into developing.

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

(a) A preliminary and permanent injunction, enjoining Defendants acting for themselves, or in concert with others, from:

1) Taking any action of any character or nature, whether intentional or unintentional, having the purpose or effect of using, disclosing, utilizing, disseminating, displaying, distributing, copying, publishing, or in any other manner using or relying on Plaintiff's or its franchisee's goodwill, trade secrets, trademarks service marks, trade names, logos, designs, trade dress, slogans, copyrights, photographs, recipes, or other confidential and

32

proprietary information, including, but not limited to, information concerning or relating, to a D.P. Dough Restaurant, Plaintiff's Franchises, or Plaintiff's or its franchisees' recipes, menus, menu items, marketing plans and concepts, business operations, business plans, business procedures, operations manuals, documentation or videos, store opening documentation, customers, franchisees, suppliers, business partners, investors, designs, layouts, expansion plans, costs, sales activities, promotions, credit and financial data, or financing methods or plans;

2) Directly or indirectly enter into the employ of, render any service to, consult with or act in concert with, engage in, or become interested in as an individual, partner, member, shareholder, director, officer, principal, agent, consultant, contributor of venture capital, guarantor, or in any other capacity or relationship with any business that is 1) engaged in the sale of calzones or pizza, or 2) that customarily has operating hours past midnight and offers food delivery services within sixty (60) miles of any D.P. Dough, as defined by the Franchise Agreement and Personal Guaranty (collectively, "the Agreement"), for a period of no less than three (3) years from the date of any forthcoming order.

3) Continuing to operate any existing "Eddie's Calzone" restaurant or similar restaurant, including the Defendants' restaurants currently located at  817 Harden St,  Columbia, SC 29205 and 265 East Clayton Athens, GA 30601;

4) Soliciting current or potential employees, staff, management, investors, franchisees, potential D.P. Dough restaurant owners or operators,  or

customers of Plaintiff, its Franchisees or of any D.P. Dough, restaurant, business or operation for a period of three years from the date of any forthcoming order;

5)  Diverting, usurping, misappropriating, affecting, interrupting or otherwise trading upon the business or goodwill of Plaintiff, Plaintiff's Franchisees or any D.P. Dough Restaurant; and

6)  Deceiving or attempting to deceive the public or cause confusion with respect to any source, affiliation, sponsorship, approval, collaboration, or connection with respect to any business operated by Plaintiff or its Franchisees and any business owned, operated, or affiliated with Defendants, including but not limited to by using photographs of Plaintiff's products, or menus, menu items, branding, and business models to Plaintiff or its franchisees.

(b) Money damages against Defendants in an amount to be determined at trial, but in any event in excess of Seventy-Five Thousand Dollars ($75,000.00);

(c) Punitive damages and treble damages pursuant to law in an amount to be determined at trial;

(d) An award of attorney's fees to Plaintiff, as provided in the Franchise Agreement and pursuant to law;

(e) An award of costs and expenses herein; and

(f) Any such further relief, both legal and equitable, as may be proper.

Respectfully submitted,

*/s/ Celia Kilgard*
Celia Kilgard (0085207)(Trial Attorney)
ckilgard@taftlaw.com
Leon D. Bass (0069901)
Lbass@taftlaw.com
Taft Stettinius & Hollister LLP
65 East State Street, Suite 1000
Columbus, Ohio 43215
Telephone:  614.221.2838
Facsimile:  614-221-2007

*Attorneys for Plaintiff D.P. Dough Franchising, LLC*

07/21/2015  13:16    8438057700         COURTYARD CHARLESTON              PAGE  01/02

## VERIFICATION

I, Matthew Crumpton, being duly sworn, deposes and says that I am the President of Plaintiff D.P. Dough Franchising, LLC in the above case captioned D.P. Dough Franchising, LLC v. Edward Southworth et. al. and have authorized the filing of this complaint. I have reviewed the allegations made in this Complaint, and to those allegations of which I have personal knowledge, I believe them to be true. As to those allegations of which I do not have personal knowledge, I rely on documentation attached as exhibits to this Complaint, records kept in the ordinary course of business, and witness statements, and I believe them to be true.

Matthew Crumpton, Esq.
President, D.P. Dough Franchising, LLC

Sworn to me this 21st day of July 2015

Notary Public